IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NANCY MOHRBACHER SOLUTIONS, INC., an Illinois corporation f/s/o and NANCY MOHRBACHER, | ) ) ) ) | JURY DEMANDED |
| | ) | NO. |
| Plaintiffs, | ) ) | |
| -vs- | ) ) | DIST. JUDGE |
| SUNNY GAULT d/b/a NEW MOMMY MEDIA; and DOE I through DOE III, | ) ) ) | MAG. JUDGE |
| Defendants. | ) ) | |

## COMPLAINT FOR INJUNCTION AND OTHER RELIEF

Plaintiffs, NANCY MOHRBACHER SOLUTIONS, INC., f/s/o and NANCY

MOHRBACHER, by their counsel, MARK H. BARINHOLTZ, P.C., complain against

defendants, SUNNY GAULT d/b/a NEW MOMMY MEDIA, and DOES I through III, and each of

them jointly and severally, and allege:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332(a)(1). The

value of the matter in controversy exceeds $75,000 exclusive of interest and costs. Plaintiffs are

citizens of the State of Illinois. Defendant is a citizen of the State of California.

2. This Court also has original jurisdiction, as this is an action brought, in part, under

the Lanham Act, 15 U.S.C. § 1125 (Sec. 43(a)), jurisdiction being conferred by 15 U.S.C. §

1121(a) and 28 U.S.C. §§ 1331, and 1338(a), in that certain of these claims arise under the federal

trademark laws, and include a related claim of unfair competition under 28 U.S.C. § 1338(b).

3. This Court also has original and exclusive jurisdiction, as this is an action brought,

in part, under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.,* jurisdiction being conferred by

28 U.S.C. §§ 1331, and 1338(a), in that certain of these claims arise out of infringement of

copyright rights, as provided by 28 U.S.C. § 1338(a).

4. This Court otherwise has supplemental jurisdiction over state law claims pursuant to

28 U.S.C. § 1367.

5.      Venue is properly laid in this District under 28 U.S.C. §§ 1391(b)(2) and (3), and § 1400(a).

## PARTIES

6.      Plaintiff NANCY MOHRBACHER ("Mohrbacher") is known nationwide and throughout the world for her achievements and expertise as a professional lactation consultant, and for her reputation as a staunch endorser and proponent of ethical breastfeeding practices.

7.      Plaintiff NANCY MOHRBACHER SOLUTIONS, INC. (f/k/a Nancy Mohrbacher Enterprises, Inc.) ("Mohrbacher Solutions"), is an Illinois corporation, the firm through which Mohrbacher conducts her business.

8.      Defendant SUNNY GAULT ("Gault") is an individual, upon information and belief, who resides in or near San Diego, California; Gault conducts business worldwide and within the State of Illinois, via a highly interactive Internet website identified as *newmommymedia.com* (also hereinafter "NMM").

9.      Defendant Gault, via her New Mommy Media website, is engaged in an online business and has, on information and belief, at all times relevant maintained regular and continuous business contacts within the State of Illinois, and has otherwise targeted her tortious acts described herein below at Mohrbacher knowing they would cause injury to Mohrbacher here in Illinois.

10.     Gault conducts business in the State of Illinois, and otherwise directs her activities at the State of Illinois by one or more of the following means: (i) by holding New Mommy Media out as willing to do business with the citizens of the State of Illinois, the fifth most populous state in the nation, (ii) by engaging the services of at least one Internet affiliate marketing firm whose headquarters are located within the City of Chicago and, on information and belief, regularly receiving a share of advertising revenues remitted to NMM from Illinois, (iii) by utilizing at least one advertisement serving platform which, on information and belief, serves geographically-targeted advertising aimed at Illinois, and which is otherwise qualified to do business in the State of Illinois, and (iv) by incorporating so-called "deal" offers on the NMM website which are hard-

coded into the site, which link directly to at least one firm located within the State of Illinois, and which holds itself out as ready to do business with the citizens of the State of Illinois.

11.  In addition to her regular and continuous business activities conducted in the State of Illinois, Gault, at all times relevant, has via the means and efforts set forth herein below, aimed and targeted her tortious acts and omissions at Mohrbacher in Illinois, knowing that they would cause harm to Mohrbacher within the State of Illinois where Mohrbacher resides and conducts business. Gault has thereby created a nexus between the commercial activities of NMM and the wrongful and unlawful acts and omissions aimed at Mohrbacher in Illinois, connecting such acts and activities to the controversy at hand.

12.  Defendants DOE I through DOE III are persons and/or firms whose identity(s) are presently unknown to plaintiffs, but who, upon information and belief, participated, directly or indirectly in, or benefitted directly or indirectly from, the wrongful acts against plaintiffs alleged herein below.

## NATURE OF THE CASE

13.  This case arises out of Gault's unauthorized use and threatened ongoing use of Mohrbacher's identity and persona in a website, *newmommymedia.com* distributed nationally and worldwide via the Internet. The website promotes Gault's financial interests and commercial activities in the context of issues pertaining to parenting and early childhood development. Gault's website relies heavily on the inclusion of "experts" in the fields pertinent to the relevant audience to which the site is targeted. Mohrbacher and Mohrbacher Solutions f/s/o Mohrbacher bring these claims against Gault for violation of the right to publicity, invasion of privacy by appropriation, invasion of privacy by false light, false association and/or endorsement, deceptive business practices, unfair competition and copyright infringement, to remedy the damage caused, and to prevent future damage to plaintiffs, threatened by Gault's unauthorized use of Mohrbacher's identity and persona.

3

## FACTUAL BACKGROUND

14.     For more than 30 years, Mohrbacher has been professionally engaged as a lactation consultant and educator, counselling new mothers, health and medical professionals, and others with a particular emphasis on health policy and breastfeeding promotion. Within her professional sphere and beyond, Mohrbacher is widely regarded as an accomplished expert in her field. Since 1982, she has been designated as a "Leader" by La Leche League Int'l, Inc., an internationally recognized organization in the field of lactation education. Since 1991, she has been accorded an "IBCLC" certification by the International Board of Lactation Consultant Examiners, a worldwide credentialing body in the field. Since 2008, she has been honored as a "Fellow" of the International Lactation Consultant Association ("FILCA"), a professional organization for IBCLCs. In addition to her professional memberships and designations, Mohrbacher has led the field with her extensive engagements for educational and speaking presentations, as well as being a well-received author and speaker on the topic of breastfeeding.

15.     Mohrbacher has long been associated with her various literary works of and concerning breastfeeding, authored and/or co-authored by her for both professionals and lay persons alike.

16.     Now in the digital era, Mohrbacher has created and, via Mohrbacher Solutions, markets a breastfeeding reference "app" designed to fulfil the needs of mobile device users. Mohrbacher also maintains a well-trafficked YouTube channel; and maintains professional promotions on Internet platforms including Facebook, Twitter and Pinterest. Mohrbacher also maintains her own website, *nancymohrbacher.com*, a website that offers consumers and professionals the ability to purchase Mohrbacher's books and mobile app.

17.     In significant part due to her strong stand in support of the principles and ethical guidelines established by the World Health Organization's International Code of Marketing of Breast-Milk Substitutes (the "WHO Code") in relation to promoting breastfeeding practices, Mohrbacher has established herself as a professional who does not support or endorse so-called

4

"WHO Code violators," *e.g.*, infant formula and related products manufacturers. Mohrbacher does not lend her services and name or otherwise accept speaker's or other fees from such persons or firms that violate the WHO Code. Mohrbacher has thereby had significant success as an expert in her field, as one who affiliates, endorses or otherwise associates with the products and services of businesses that wish to profit from adhering to the WHO Code. Such firms contract with her to use one or more aspects of her well-known identity, including her name and persona, in their commercial activities and marketing efforts. Mohrbacher's persona includes, among other things, her identity, image, and creative literary works associated with her career.

18.     By carefully controlling and promoting the principled nature and integrity of her services and commercial affiliations continuously over a long period of time, Mohrbacher has enhanced and maintained the value and goodwill of her name and persona and her ability to nurture affiliations, and her identity has thereby become well and favorably known among her relevant professional audience and others with which she deals.

19.     A significant portion of Mohrbacher's income, and her income potential, is derived from her ability to lend her name and persona to the commercial activities of those who wish to capitalize on her reputation and expertise. As a business, the exploitation of and ability to control Mohrbacher's identity is an important economic component of her professional consultant's career, and have become an intrinsic and essential part of the valuable goodwill established to purchasers and others in Mohrbacher's persona and Mohrbacher Solutions' commercial activities.

20.     During 2013, Mohrbacher was contacted by NMM personnel who solicited Mohrbacher to participate as a featured guest expert in a series of interviews on various aspects of breastfeeding. The interviews were to be posted on the NMM website as podcasts which could be accessed by visitors to the site, together with a profile photograph and brief bio of Mohrbacher.

21.     Before agreeing to participate, Mohrbacher visited the NMM website to vet the content and otherwise make certain the site's purpose and advertisers were consistent with Mohrbacher's standards, and in particular her firm stance on the WHO Code. At that time, NMM

appeared to be in compliance. In addition, Mohrbacher was assured by NMM personnel that NMM would always abide by the WHO Code and would not be accepting any advertising from WHO Code violators.

22.    In reliance on such assurances, Mohrbacher orally consented, on a non-exclusive basis, to be interviewed by NMM personnel for the podcasts. On information and belief, the NMM website, including the podcasts to be embodied therein, was distributed worldwide via the Internet.

23.    At or about August 2013, January 2014 and April 2014, Mohrbacher was interviewed for a series of three podcasts covering various breastfeeding topics, while present in her office in Cook County, Illinois. Copies of the first page of each of the interview transcripts as posted online on the NMM website, are attached hereto as group Exhibit "A".

24.    The NMM website also included a range of other experts on topics pertaining to child-rearing and issues of interest for new parents, together with a significant variety and amount of online advertisements for products and services related to parenting and early child care.

25.    At or about December 2015, Mohrbacher became aware that Gault had decided to change the NMM site's WHO Code Policy; Gault unilaterally and arbitrarily intended to adopt her own revised so-called "NMM WHO Code Policy." (the New Policy") Gault's New Policy clearly stated that NMM "has determined [NMM] will not be able to fully comply with [the WHO Code]," in significant part because NMM would be limited with respect to "the companies we choose to promote... ."

26.    The New NMM Policy thereby expressly declared Gault's intention to allow the website to incorporate, link to and otherwise associate with advertisers and others who are WHO Code violators, in order to economically benefit from such commercial ties and activities.

27.    In early January 2015, Mohrbacher immediately sought to dissociate herself from the NMM website, and at or about January 5, 2016, notified Gault that any permission previously allowed by Mohrbacher for the use of her name, identity, image or authorship in connection with the NMM site, was revoked and terminated. Mohrbacher then and there requested that all such

references and links to her identity and persona be deleted, stricken and otherwise scrubbed from the NMM website.

28.     Gault refused. Instead, on or about January 8, 2016, Gault forwarded Mohrbacher a self-styled digital "Takedown" format with instructions which, *inter alia*, sought to impose conditions upon Mohrbacher, or ostensibly any other expert who might seek to disassociate from NMM by having podcasts and identifying materials removed from the site. (an "exiting expert")

29.     Such conditions and obligations which Gault unilaterally sought to impose on exiting experts, were never previously articulated by Gault before December 2015, much less agreed to by Mohrbacher, and particularly at the time Mohrbacher's interviews were conducted and posted as podcasts to Gault's NMM website.

30.     Among Gault's so-called Takedown conditions were Gault's arbitrary dictates, demands and thinly-veiled threats that any expert seeking to exit the NMM website would be subject to the following:

    (a) the necessity for the expert to fill out the so-called Takedown form "in its entirety," failing which, the "application [to be removed] will be declined"; and

    (b) for the expert to provide a written explanation as to why that particular episode is being requested to be removed; and

    (c) for the expert to provide an expanded explanation as to why – in Gault's self-serving terms, since the "episode was originally created to help new and expecting parents" – the expert's request to take down the podcast would now be "helpful" to parents or others who might be seeking to re-visit the podcast; or in Gault's argumentative words "how are we helping these parents by removing this episode."

31.     In addition, Gault's Takedown conditions provided that notwithstanding the expert's exit from the NMM website, Gault intended to permanently post an online message indicating that the expert had requested his or her podcast to be removed, and such post would include a reproduction of the expert's forced "explanation" and rationale, permanently and with a

7

link to the actual Takedown form which the expert had completed, but only to Gault's personal satisfaction.

32.     Gault's so-called Takedown requirements, including the attempt to impose conditions and obligations never agreed to beforehand by the experts, amount to nothing more than pretextual efforts to prevent those exiting experts from dissociating with the NMM website. Such efforts were intended by Gault to put up barriers which are harmful and threatening, but which otherwise would have the desired effect of enabling Gault to hold on to the free website content she had garnered from the experts' participation. Such content, on information and belief, boosted Gault's traffic to the NMM website and, in turn, Gault's opportunities to increase her own gain.

33.     Although prior to January 2016 the NMM website featured Mohrbacher's podcasts, profile photo and bio online, after that time it went beyond that by appropriating Mohrbacher's identity and persona so as to falsely and misleadingly cause confusion or mistake in the minds of Mohrbacher's relevant professional purchasers and others, suggesting, implying and sending the message as fact that Mohrbacher was indifferent to, or even supports, being associated, affiliated with or connected to the commercial activities of WHO Code violators' products and services and Gault's commercial activities via the NMM website, when in reality such "facts" are not true.

34.     By yielding to Gault's so-called Takedown conditions, Mohrbacher would be subjecting herself to ongoing and perpetual professional embarrassment and humiliation, and be subject to the reputational harm she has meticulously avoided throughout her career.

35.     The kinds of links to the NMM website, and exiting expert's "footprints" which Gault threatens to post permanently on the NMM website, if acceded to by Mohrbacher, would add to the confusion and, further strip Mohrbacher of control over her persona resulting in self-inflicted reputational harm which Mohrbacher is lawfully entitled to avoid.

36.     At the bottom of most web pages of Gault's NMM website is a copyright notice in the name of New Mommy Media. Although a limited liability company was registered by Gault in California prior to 2012, that entity was "canceled," no longer exists and, upon information and

belief, Gault has at all times relevant since been conducting her NMM website enterprise as a sole proprietorship. A copy of California business entity detail is attached hereto as Exhibit "B".

37.     From and after January 2016, and in particular after Gault changed the NMM site's WHO Code Policy and Takedown restrictions, Gault never sought or received Mohrbacher's permission to continue to use Mohrbacher's identity or to imply her endorsement, association or connection with the commercial activities, services or policies offered or engaged in by Gault.

38.     After Gault's decision to allow WHO Code violators to advertise on the NMM website, Mohrbacher would never permit Gault to use Mohrbacher's identity or persona in connection with any of Gault's NMM website's commercial activities or services, especially not those in direct conflict with Mohrbacher's firmly held position against WHO Code violators.

39.     Mohrbacher's identity and reputation are, in effect, her brand, now loaned out by Mohrbacher Solutions, and has been used and carefully cultivated by her continuously since 1982, to distinguish her unique, highly regarded professional persona.

40.     Mohrbacher and Mohrbacher Solutions have used the brand in interstate commerce throughout the United States for many years to promote a wide variety of commercial activities and services, including counselling, educating, promoting authorship and public service, through various conferences, speaking engagements and corporate events.

41.     Because of her relevant public's widespread knowledge of and admiration for Mohrbacher's high standards and reputation, Mohrbacher's services and activities have come to be well and favorably known, and her purchasing public, including a professional subset thereof, have also benefitted economically from their association with her via her literary works, speaking engagements, and various commercial activities aforesaid.

42.     Mohrbacher's name and persona have developed significant commercial value, particularly among her relevant purchasing public, in promoting products and services as a result of such knowledge and admiration of her.

43.     Mohrbacher and Mohrbacher Solutions have been damaged by Gault, and are

threatened to be so damaged in the future by Gault, whose unauthorized acts and omissions infringe Mohrbacher's right of publicity, invade Mohrbacher's privacy by appropriation and false light, falsely imply Mohrbacher's endorsement of and/or association with Gault's commercial activities via NMM, and otherwise unfairly compete with Mohrbacher and Mohrbacher Solutions by means of deceptive trade practices. Gault has also infringed Mohrbacher's copyright rights in her works, as more fully alleged herein below. The co-opting of Mohrbacher's identity and persona, damages Mohrbacher and Mohrbacher Solutions by diminishing the value of Mohrbacher's goodwill and reputation and by threatening her potential to endorse, associate, affiliate and otherwise work in connection with WHO Code compliant firms.

## COUNT I
### (MOHRBACHER'S CLAIM FOR VIOLATION OF THE ILLINOIS RIGHT OF PUBLICITY ACT)

44.     Mohrbacher realleges and incorporates by reference Paragraphs 1 through 43 of this Complaint.

45.     Gault's unauthorized use of Mohrbacher's identity for commercial purposes is a violation of the Illinois Right of Publicity Act, 765 ILCS 1075/30(a), *et seq.*

46.     Gault's use of Mohrbacher's identity was unauthorized because Gault did not seek or obtain Mohrbacher's consent to use of her identity in connection with the NMM website or otherwise, from and after December 2015.

47.     Gault's use of Mohrbacher's identity was willful because she used Mohrbacher's identity intentionally and with knowledge that such use was not authorized.

48.     Mohrbacher's right to control and use her name and identity has been damaged by Gault's unauthorized use of her identity and persona.

WHEREFORE, Mohrbacher requests that relief be granted in her favor and against Gault and Doe Defendant(s), and each of them jointly and severally for, (a) damages sustained by Mohrbacher, including Gault's profits, in an amount greater than $75,000.00, or in the alternative such statutory damages as may be allowed under the Illinois Right of Publicity Act, (b) punitive

damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Gault to refrain from any use of Mohrbacher's identity without prior authorization from Mohrbacher, and (e) such other and further relief as to the Court shall seem just and proper.

## COUNT II
## (MOHRBACHER'S CLAIM FOR ILLINOIS COMMON LAW INVASION OF PRIVACY BY APPROPRIATION OF IDENTITY)

49.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 43 of this Complaint.

50.     By virtue of the foregoing premises, Gault has co-opted and expropriated Mohrbacher's identity and persona, and has done so with malice or reckless disregard.

51.     As a direct and proximate result of Gault's acts and omissions Mohrbacher has suffered divers nervous shocks and mental pains, and sustained personal injury and damage.

52.     Unless Gault is stopped, Mohrbacher will continue to be so injured.

WHEREFORE, Mohrbacher requests that relief be granted in her favor and against Gault and Doe Defendant(s), and each of them jointly and severally for, (a) damages sustained by Mohrbacher, in an amount greater than $75,000.00, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Gault to refrain from any use of Mohrbacher's identity without prior authorization from Mohrbacher, and (e) such other and further relief as to the Court shall seem just and proper.

## COUNT III
## (MOHRBACHER'S CLAIM FOR ILLINOIS COMMON LAW INVASION OF PRIVACY BY FALSE LIGHT)

53.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 43 of this Complaint.

54.     By virtue of the foregoing premises, Gault has impugned and sought to impugn Mohrbacher's reputation in her profession, and has done so with malice or reckless disregard.

55.     As a result, Mohrbacher has been placed before the public in a false light, suggesting a want of integrity, which would be highly offensive to a reasonable person.

56.     As a direct and proximate result of Gault's acts and omissions Mohrbacher has suffered damage, and sustained personal injury in the nature of embarrassment and humiliation.

57.     Unless Gault is stopped, Mohrbacher will continue to be so injured.

WHEREFORE, Mohrbacher requests that relief be granted in her favor and against Gault and Doe Defendant(s), and each of them jointly and severally for, (a) damages sustained by Mohrbacher, in an amount greater than $75,000.00, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Gault to refrain from any use of Mohrbacher's identity without prior authorization from Mohrbacher, and (e) such other and further relief as to the Court shall seem just and proper.

### COUNT IV
### (PLAINTIFFS' CLAIM FOR VIOLATION OF SECTION 43(a) OF THE LANHAM ACT—FALSE ENDORSEMENT OR ASSOCIATION)

58.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 43 of this Complaint.

59.     Gault's unauthorized use of Mohrbacher's identity, including her name and persona, in connection with the NMM site's commercial activities was and threatens to continue to be a false or misleading representation of fact that falsely implies Mohrbacher's endorsement or approval of Gault's website activities and services.

60.     Gault's unauthorized use of Mohrbacher's identity:

(a)  is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Gault's NMM site with Mohrbacher or as to the origin, sponsorship or approval of Gault's website activities and services by Mohrbacher in violation of Section 43(a) of the Lanham Act, 15  U.S .C. § 1125(a)(1)(A); or

(b)  misrepresents the nature, characteristics or qualities of Gault's website activities and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C § 1125(a)(1)(B).

61.     Mohrbacher and Mohrbacher Solutions have been damaged by these acts, all in violation of Section 43(a) of the Lanham Act,  15 U.S.C. § 1125(a).

12

62.     This case is an exceptional case pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiffs request that relief be granted in their favor and against Gault and Doe Defendant(s), and each of them jointly and severally for, (a) damages sustained by Plaintiffs, including Gault's profits, in an amount greater than $75,000.00, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Gault to refrain from any use of Mohrbacher's identity without prior authorization from Mohrbacher, and (e) such other and further relief as to the Court shall seem just and proper.

## COUNT V
## (PLAINTIFFS' CLAIM FOR VIOLATION OF ILLINOIS' CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT)

63.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 43 of this Complaint.

64.     Gault's acts constitute unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2 et seq., in that those acts have created a likelihood of confusion or misunderstanding as to Mohrbacher's or Mohrbacher Solutions' sponsorship or approval of Gault's NMM site's commercial activities and services, or created a likelihood of confusion as to Gault's affiliation, connection or association with Mohrbacher or Mohrbacher Solutions.

65.     Gault's conduct in violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act is willful and outrageous, perpetrated by malicious motive or with reckless indifference to the rights of others.

66.     Mohrbacher and Mohrbacher Solutions have been damaged by these acts.

WHEREFORE, Plaintiffs request that relief be granted in their favor and against Gault and Doe Defendant(s), and each of them jointly and severally for (a) damages sustained by Plaintiffs, including Gault's profits, in an amount greater than $75,000.00, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Gault to refrain from any use of Mohrbacher's identity without prior authorization from Mohrbacher, and (e) such other and further

relief as to the Court shall seem just and proper.

## COUNT VI
### (PLAINTIFFS' CLAIM FOR COMMON LAW
### UNFAIR COMPETITION)

67.     Plaintiffs reallege and reincorporate by reference Paragraphs 1 through 43 of this Complaint

68.     Gault's acts constitute unfair competition under the common law of the State of Illinois.

69.     Gault's acts are willful and have damaged Mohrbacher and Mohrbacher Solutions.

WHEREFORE, Plaintiffs request that relief be granted in their favor and against Gault and Doe Defendant(s), and each of them jointly and severally for, (a) damages sustained by Plaintiffs, including Gault's profits, in an amount greater than $75,000.00, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Gault to refrain from any use of Mohrbacher's identity without prior authorization from Mohrbacher, and (e) such other and further relief as to the Court shall seem just and proper.

## COUNT VII
### (PLAINTIFFS' CLAIM FOR DIRECT
### COPYRIGHT INFRINGEMENT)

70.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 43 of this Complaint.

71.     In connection with the podcasts, various works ancillary to the purposes for which the podcasts were produced, namely (i) a profile photo of Mohrbacher, and (ii) a biographical description pertaining to Mohrbacher (the "Registered Works"), were posted on the NMM website.

72.     In addition, Mohrbacher owns the copyright in the authorship she created through her participation and statements made in the interviews. (the "Unregistered Works") (Mohrbacher reserves the right to register her copyright authorship in the interviews, and to amend this action to include a specific claim for relief in that regard.)

73.     The Registered Works and the Unregistered Works (collectively "the Works")

14

contain substantial material wholly original with their creative author, Mohrbacher, owner of Mohrbacher Solutions, and constitute copyrightable subject matter under the copyright laws of the United States of America. All such works are original to Mohrbacher as their creative author and/or to Mohrbacher Solutions as her authorized agent.

74.    Mohrbacher has complied with all registration and deposit requirements of § 411(a) of the federal copyright laws, and has applied for copyright registration for the Registered Works, and has submitted completed applications, with copies of those Works (photo [in B&W] and bio), and necessary fees, the receipt of which have all been acknowledged by the U.S. Copyright Office. Copies of confirmations of the pertinent applications for copyright registration to the Copyright Office, together with the works, are attached hereto as group Exhibits "C" and "D".

75.    At or about January 2016, Mohrbacher revoked and terminated any previous oral, non-exclusive permission allowed to Gault for the use of the Registered Works on the NMM site, and Mohrbacher unequivocally communicated such revocation to Gault. At that same time, Mohrbacher also revoked and terminated any previous non-exclusive permission allowed to Gault to use Mohrbacher's recorded and transcribed interview authorship on the NMM website.

76.    From and after that time, no license was granted to or obtained by Gault or other Doe Defendant(s), or any of them, for the dissemination and/or use of the Works for any purpose.

77.    From at least January 2016 and, upon information and belief, Gault and Doe Defendant(s) infringed the copyrights in the Works, and Plaintiffs' exclusive rights therein, by various means, including but not limited to, (i) continuing to display and disseminate digital copies of the Works via the NMM website, and (ii) incorporating unauthorized copies of the Works onto *newmommymedia.com* in order to advertise and promote the sales of goods and services touted by Gault in connection with her unauthorized online reproductions of the Works.

78.    That such acts aforesaid by Gault and Doe Defendant(s) were and are for her/their own pecuniary use and benefit, and infringe upon Plaintiffs' exclusive copyright rights in the Works.

79.     That unless the Court intervenes to compel the cessation of such acts, Mohrbacher is informed and believes that the unlawful infringements are threatened and/or are likely to continue.

80.     That by virtue of the acts hereinabove alleged, Gault and Doe Defendant(s) have infringed Plaintiffs' copyright rights, and Plaintiffs have been caused to and have thereby, suffered and sustained irreparable harm and economic injury.

WHEREFORE, Plaintiffs request that with respect to the Registered Works relief be granted in their favor and against Gault and Doe Defendant(s), and each of them jointly and severally for, (a) damages sustained by Plaintiffs, including Gault's profits, in an amount greater than $75,000.00, or in the alternative such statutory damages as may be allowed under the U.S. Copyright Act, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Gault to refrain from any use of Plaintiffs' Registered Works without prior authorization from Plaintiffs, and (e) such other and further relief as to the Court shall seem just and proper.

<u>**COUNT VIII**</u>
**(PLAINTIFFS' CLAIM FOR LIABILITY**
**vs. DOE I – DOE III DEFENDANTS)**

81.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 43 of this Complaint.

82.     On information and belief, one or more individual(s), firm(s), affiliate(s) or contractor(s), acting in concert with Gault, was a conscious, active and dominant force causing or contributing to cause, and which resulted in, the unlawful acts and infringements herein alleged.

83.     That alternatively, or in addition to other tortfeasors and infringers above alleged, on information and belief, there are various persons and firms who financially benefitted from and/or retained rights to exercise control over such unlawful activities as are alleged above, and are therefore vicariously liable for such acts and infringements.

84.     On information and belief, those individuals, firms, affiliates and/or contractors above referenced who personally or directly contributed to, authorized and/or participated in

16

violating Mohrbacher's rights and infringing Mohrbacher's Works and her identity, and her exclusive rights therein, and otherwise violated her rights by the various means aforesaid, *inter alia*.

85.     That such tortious acts hereinabove alleged against such Doe Defendant(s) were and are for their own individual gain and benefit, as well as the gain and benefit of their firms, affiliates or contractors, and infringe upon Mohrbacher's exclusive rights in her identity and her Works.

86.     That by virtue of the acts hereinabove alleged, Defendants Doe I through Doe III infringed Mohrbacher's copyrights, and otherwise violated her rights as heretofore alleged, and she has been caused to and has thereby suffered and sustained irreparable harm and economic injury.

WHEREFORE, Plaintiffs request that relief be granted in their favor and against Gault and Doe Defendant(s), and each of them jointly and severally for, (a) damages sustained by Plaintiffs as alleged in Counts I thru VI, including Gault's profits, in an amount greater than $75,000.00, or in the alternative such statutory damages as may be allowed under the Illinois Right of Publicity Act and/or with respect to the Registered Works under the U.S. Copyright Act as alleged in Count VII, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Gault to refrain from any use of Mohrbacher's identity without prior authorization from Mohrbacher, and (e) such other and further relief as to the Court shall seem just and proper.

PLAINTIFFS HEREBY DEMAND TRIAL BY JURY

Dated:   June  16   2016

NANCY MOHRBACHER SOLUTIONS, INC.,
f/s/o and, NANCY MOHRBACHER, Plaintiffs.

By:   _/s/ Mark Barinholtz_  *UB*.
                    Attorney

Mark Barinholtz, Esq.
MARK H. BARINHOLTZ, P.C.
Attorney for Plaintiff
55 West Monroe Street
Suite 3600
Chicago, IL 60603
(312) 977-0121

17